IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

```
UNITED STATES OF AMERICA    )
                            )    CRIMINAL ACTION NO.
     v.                     )       2:23cr123-MHT
                            )          (WO)
TOCORRA LASHAY MINEFIELD    )
```

## FINDINGS OF FACT AND CONCLUSIONS OF LAW
## UNDERLYING THE COURT'S VARIANCE DECISION

Defendant Tocorra Lashay Minefield was indicted in April 2023 for 18 counts: four counts of making and subscribing a false tax return in violation of 26 U.S.C. § 7206(1), on various dates between January 2019 and March 2022; and 14 counts of aiding and assisting in the filing of a false tax return in violation of 26 U.S.C. § 7206(2), on various dates between January 2017 and February 2021. Minefield pleaded guilty to one count of making and subscribing a false tax return in violation of § 7206(1) and one count of aiding and assisting in the filing of a false tax return in violation of § 7206(2). After a sentencing hearing, and having considered and consulted the sentencing guidelines, the arguments of counsel, and the

reasonableness of a sentence through the lens of 18 U.S.C. § 3553, the court sentenced her to 60 months of probation with a special condition that she serve 14 of those months on home detention. Additionally, she was required to pay $ 94,335 in restitution to the Internal Revenue Service. The court further imposed as special conditions of supervision that she must undergo a psychiatric evaluation and individual psychotherapy as recommended by Dr. Ashlee Zito.[1] *See* Evaluation (Doc. 28-1) at 17. The court now enters this opinion to further explain the findings of fact and conclusions of law underlying the variance.

Minefield committed a serious offense. She caused a loss of over half-a-million dollars to the

---

1. Shortly after leaving the sentencing hearing, the court realized that it had failed to impose these conditions as planned. Counsel for the government and the defense were contacted by email and confirmed by email that they did not oppose the court imposing these conditions and that they waived any objection to the court doing so without reconvening the sentencing hearing.

government, personally obtaining over $ 90,000 of that amount, by filing false tax returns over a period of several years. She knew what she was doing was wrong and she did it anyway. Her actions merit a significant punishment.

The defense sought a variance based on the harm Minefield's incarceration would cause to her child. The government argues that, before considering whether Minefield is entitled to a variance based on family circumstances, the court must decide whether the U.S. Sentencing Guidelines departure for family circumstances, § 5H1.6, applies in order to calculate the applicable guideline range. The court rejects this argument because it is an incorrect statement of the law. None of the cases cited by the government stand for this proposition. *See, e.g.*, *Gall v. United States*, 552 U.S. 38, 49 (2007); *United States v. Howard*, 28 F.4th 180, 212 (11th Cir. 2022). Nonetheless, the court considered giving Minefield a departure under the

3

family-circumstances guideline and exercised its discretion to decline to do so. Instead, the court chose to consider the family-circumstances argument as only a request for a variance, rather than a departure.

Following probation's recommendation, the court began its assessment at the bottom of Minefield's guidelines range, 18 months' imprisonment. As the government stated, if she were to be sentenced to 18 months, she would likely serve a little over 14 months and then be subject to no more than a year of supervised release. It is the court's understanding that the Bureau of Prisons moves most prisoners, especially those with nonviolent offenses, to a halfway house between six months and a year before their sentence is up. Thus, if the court were to impose an 18-month sentence, she would likely spend between two and eight months in prison. Two-to-eight months in prison is a short prison sentence, but based on the expert testimony the court heard, would have

**4**

devastating effects on Minefield's nine-year-old child, E.W.

As the government argued, the loss of a parent to incarceration would hurt any child. But, because E.W. has autism with Level 2 support needs and ADHD, his situation is not comparable to that of an ordinary child whose parent goes to prison. The impact of his mother's incarceration on E.W. would be far worse than the impact of the loss of a parent on a child without E.W.'s disability. An ordinary child would experience the loss of love, care, guidance, and support, but those things could be provided by other adults. Children without E.W.'s disability can form attachments to multiple adults in their lives. They can develop close relationships with parents, siblings, grandparents, relatives, and friends. A grandparent, aunt, or foster parent can step into a parental role and provide love, care, guidance, and support to a non-disabled child just as well as the parent can. A

5

non-disabled child may be traumatized by the parent's incarceration, but other adults can try to make up for the loss and can be successful at doing so. Moreover, based on the court's general knowledge, a non-disabled child could attend widely available therapy to address the loss of the parent.

The court found, based on the report by, and the testimony from, Dr. Tyler D. Whitney--a licensed clinical psychologist who also teaches at the Emory University School of Medicine and has extensive experience in the treatment and evaluation of children with autism spectrum disorders--that E.W. is in a totally different situation. E.W. has been diagnosed with autism with Level 2 support needs and ADHD, combined type. Autism has three levels of support needs; in essence, Level 2 means that E.W. has the ability to speak (unlike children with Level 3 support needs) but is significantly limited in his ability to function. Dr. Whitney convincingly opined that

Minefield's incarceration would be uniquely devastating
to E.W. due to his disability.  Unlike children without
E.W.'s disability, other adults in E.W.'s life cannot
provide an adequate substitute for his mother's care.
The loss of her care during her incarceration would
likely be, as Dr. Whitney testified, "catastrophic and
nonrecoverable."  E.W.'s mother is his sole conduit to
the world.  She is uniquely essential to his
well-being.  He is made extremely uncomfortable by
changes in his routine and is not comfortable sharing
his feelings with anyone but his mother.  He relies on
her entirely for his sense of safety and stability.  If
she were taken away from him, the world would suddenly
become a much scarier place.  He is entering a critical
developmental phase, and if his mother is taken from
him now, the doctor testified, he is likely to either
go into complete withdrawal or become very irritable
and aggressive towards authority figures.  The damage
could be irreparable.  Thanks to the efforts of his

mother, he has made progress in his functioning. However, should she be separated from him, all of that progress could be lost permanently, leaving E.W. unable to function. Dr. Whitney seemed skeptical that these losses could be overcome through treatment after the fact.

Additionally, Minefield testified that no other family member would be available to care for E.W. if his mother was incarcerated. His grandparents could not handle his energy level and other family members would not be able to care for him. Therefore, in the absence of his mother's care, E.W. would likely be forced to enter foster care. The effects of such a dramatic change, and the impact of having a caretaker without knowledge of E.W.'s history, would be devastating for E.W.'s development.

Aside from the impact on E.W., with a sentence of incarceration, the court could not impose a term of more than one year of supervised release. Thus, with

an 18-month prison sentence, reduced to around 14 months for good time, Minefield would realistically have her liberty restricted for, at most, 24 months. By varying to a sentence of probation, the court can extend the period of restriction of liberty from two years to five years.

Moreover, with an 18-month sentence, Minefield might not even be sent to prison, but instead might serve her sentence in the local detention facility. In either case, she likely would not have access to any rehabilitative programming from the Bureau of Prisons due to the length, and possibly the location, of her incarceration. With a probationary sentence, the court can provide the psychiatric evaluation and individual psychotherapy recommended by Dr. Zito without delay. *See* 18 U.S.C. § 3553(a)(2)(D) (requiring the court to consider "the need for the sentence imposed— ... to provide the defendant with needed educational or

vocational    training,    medical    care,    or    other
correctional treatment in the most effective manner").

Minefield's guideline range of 18-24 months is at
the lower end of Zone D on the sentencing table.  The
court found that a variance to the higher end of Zone B
was    appropriate    and    sufficient    in    light    of    the
circumstances   in   this   case,   which   would   allow   for   a
sentence   of   probation.    A   four-level   variance   would
take   the   offense   level   from   15   to   11,   which   yields   an
imprisonment range of 8-14 months, and is in Zone B of
the    sentencing    table.    Given    the    above-discussed
circumstances,   the   court   finds   that   a   sentence   of
probation is appropriate.

Under   Guidelines   §
5B1.1,   a   sentence   of   probation
is "authorized where the applicable guideline range is
in Zone B of the Sentencing Table and the court imposes
a   condition   or   combination   of   conditions   requiring
intermittent   confinement,   community   confinement,   or
home   detention   as   provided   in   subsection   (c)(3)   of

10

§ 5C1.1 (Imposition of a Term of Imprisonment)."  U.S. Sentencing Guidelines § 5B1.1 (2023 ed.).

Therefore, in light of the factors set forth in 18 U.S.C. § 3553(a)(2)(A) & (B) (requiring the court to consider "the need for the sentence imposed— (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; [and] (B) to afford adequate deterrence to criminal conduct"), the court decided to impose the maximum term of incarceration under the revised guideline range, 14 months, as home detention within the maximum term of probation, five years.  Five years, or 60 months, of probation, including 14 months of home detention, adequately reflects the gravity of Minefield's offense, deters future criminal conduct, allows for the provision of psychological treatment in the most effective manner, and avoids potentially devastating impacts on E.W.

Finally, the court notes that it has looked at the cases cited by the government in its sentencing memos and finds that they are distinguishable from this case. In particular, the court notes that in *U.S. v. Howard*, 28 F.4th 180 (11th Cir. 2022), where the appeals court overturned a district court's decision to grant probation as substantively unreasonable, the applicable guidelines range was 78-84 months. That range is much longer than the applicable guidelines range here. There, the defendant was looking at around five years in prison with good time. Here, the likely incarceration sentence is only about 14 months. As noted earlier, much of Minefield's sentence would be served in a halfway house in the local community. Additionally, *Howard* imposed probation for three years in lieu of the 78-84-month guideline range. Here, the court is imposing the maximum term of probation, five years, in lieu of Minefield's guideline range of 18-24

12

months in prison.   Thus, the variance in *Howard* was much more substantial.[2]

DONE, this the 18th day of September, 2024.

    /s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE

_____

    2.  The government also argued that a sentence of probation would run contrary to "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. 3553(a)(6).  The court considered this issue, but found that Minefield and her codefendant did not have similar records--Minefield had no criminal history whatsoever, while her codefendant had a long criminal history and was on probation at the time of the offense.  The court further found that Minefield's codefendant caused a much greater loss to the government.  These factors mitigated the disparity in sentences.  Also, this factor was outweighed by other § 3553(a) factors, for the reasons discussed in this opinion.

13